# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 19-1411V
### UNPUBLISHED

| | |
|---|---|
| ALAINA GUYMON,<br><br>                Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: March 25, 2022<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*John Robert Howie, Howie Law, PC, Dallas, TX,* for Petitioner.

*Jennifer Leigh Reynaud, U.S. Department of Justice, Washington, DC,* for Respondent.

### DECISION AWARDING DAMAGES[1]

On September 13, 2019, Alaina Guymon filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), which meets the Table definition for SIRVA, after receiving the influenza vaccine on October 5, 2018. Petition at 1, ¶ 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. Although a ruling on entitlement in Petitioner's favor was issued in early March 2021, the parties have been unable to resolve damages on their own.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount **$110,245.80**, **representing $110,000.00 for actual pain and suffering, and $245.80 for past unreimbursed expenses.**

## I.      Relevant Procedural History

Along with the Petition, Ms. Guymon filed a declaration signed under penalty of perjury pursuant to 28 U.S.C.A. § 1746, and the medical records required under the Vaccine Act. Exhibits 1-4, filed Sept. 13, 2019, ECF No. 5; *see* Section 11(c). Approximately one month later, she filed updated medical records. Exhibit 5, filed Oct. 11, 2019, ECF No. 12. On June 10, 2020, Respondent's counsel indicated that she had identified no outstanding medical records or factual issues which could be addressed while awaiting the HHS review. ECF No. 17. Petitioner forwarded her demand and supporting documentation to Respondent on October 28, 2020. ECF No. 21.

On March 1, 2021, Respondent filed his Rule 4(c) Report conceding Petitioner was entitled to compensation, and I issued a Ruling on Entitlement the same day. ECF Nos. 25-26. Respondent also filed a status report indicating that he had provided Petitioner with a proffer. ECF No. 28.

Seven days later, Petitioner filed a second declaration, a list of her out-of-pocket medical expenses, and briefing regarding the appropriate amount of damages. Exhibits 6-7, ECF No. 29; Petitioner's Motion for Damages Ruling on the Record ("Brief"), ECF No. 30. On April 21, 2021, Respondent filed his responsive brief. Respondent's Brief on Damages ("Opp."), ECF No. 33. Petitioner also filed a reply brief addressing the arguments made by Respondent, the transcript of the proceedings in a case Respondent discussed in his brief, and a joint status report clarifying that the parties' only dispute involved the compensation to be awarded for Petitioner's pain and suffering which they asked me to determine based on the written record as it currently stands. Petitioner's Reply Brief on Damages ("Reply Brief"), ECF No. 36; Exhibit 8, ECF No. 35; Joint Status Report, ECF No. 37. The matter is now ripe for adjudication.

## II.      Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury,

and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### III.   Prior SIRVA Compensation Within SPU[4]

#### A.   Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2022, 2,371 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,306 of these cases, with the remaining 65 cases dismissed.

Of the compensated cases, 1,339 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 88 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[5]

1,223 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] *See, e.g., Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

The remaining 967 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

| | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[6] Agreement |
|---|---|---|---|---|
| **Total Cases** | *88* | *1,223* | *28* | *967* |
| **Lowest** | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $70,950.73 | $70,000.00 | $90,000.00 | $42,500.00 |
| **Median** | **$95,974.09** | **$90,000.00** | **$122,886.42** | **$60,390.00** |
| **3rd Quartile** | $125,269.46 | $116,662.57 | $161,001.79 | $88,051.88 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B.   Pain and Suffering Awards in Reasoned Decisions

In the 88 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $94,000.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[7]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners experienced this greater pain for three months or less. All petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered

---

[6] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[7] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. The duration of the injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive. Only one petitioner provided evidence of an ongoing SIRVA, and it was expected to resolve within the subsequent year.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 95 PT sessions over a duration of more than two years and multiple cortisone injections, was required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## IV.   The Parties Arguments

The parties agree Petitioner should be awarded $245.80 for past unreimbursed medical expenses. Brief at 1, 22, 31; Opp. at 1, 9; Reply Brief at 8. Thus, the only area of disagreement is regarding the amount of compensation which should be awarded for pain and suffering. Petitioner seeks $110,000.00, and Respondent argues for an award of $77,500.00. *Id.*

Arguing for the greater amount, Petitioner emphasizes her excellent health and young age at the time of vaccination – 41 years old – in contrast to her subsequent inability to work as a substitute teacher or to exercise at the gym, and difficulties sleeping. Brief at 24. She favorably compared the facts and circumstances of her case with *Cates, Knudson,* and *Wilt,* where petitioners received pain and suffering awards of $108,000.00 and $110,000.00.[8] Brief at 25-28. These cases involved petitioners who underwent arthroscopic surgery and recovered from their SIRVA Injuries within seven to ten months post-vaccination. *Id.; see Cates,* 2020 WL 3751072, at *3; *Knudson,* 2018 WL 6293381, at *8-9; *Wilt,* 2020 WL 1490757, at *14-15. Regarding the two $110,000.00 awards, she equates her surgery with that undergone by the *Knudson* petitioner – subacromial

---

[8] *Cates v. Sec'y of Health & Hum. Servs.,* No.18-0277V, 2020 WL 3751072 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $108,000.00 for actual pain and suffering): *Knudson v. Sec'y of Health & Hum. Servs.,* No.17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for actual pain and suffering); *Wilt v. Sec'y of Health & Hum. Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020) (awarding $110,000.00 for actual pain and suffering).

bursectomies - and observes that the *Wilt* petitioner had pre-existing shoulder arthritis and pain, neck pain, and cervical radiculopathy. *Knudson,* 2018 WL 6293381, at *4; *Wilt,* 2020 WL 1490757, at *2.

To further buttress her argument, Petitioner discusses an additional case, *Selling,* in which the pain and suffering award was $105,000.00,[9] and three other cases (*Collado, Meyers,* and *Dobbins*) with pain and suffering awards ranging from $120,000.00 to $125,000.00.[10] Brief at 24-25, 28-29. She highlights numerous similarities in treatment and duration in *Selling,* noting that the major distinction involved the procedures undergone - arthroscopic surgery for Petitioner, versus manipulation under general anesthesia for the *Selling* petitioner. *Id.* at 24-25; *see Selling,* 2019 WL 3425224, at *6 (distinguishing the *Selling* petitioner's procedure from other more open and invasive arthroscopic surgeries). The more non-invasive nature of the manipulation formed the basis for her requested amount - $5,000.00 more than the pain and suffering award in *Selling. Id.* But she admits that the three cases with higher awards involved injuries and surgical repairs more significant than what she endured. Brief at 28-29; *see Collado,* 2018 WL 3433352, at *6-7; *Meyers,* 2020 WL 3755335, at *3-4; *Dobbins,* 2018 WL 4611267, at *10-11.

In his responsive brief, Respondent emphasizes the 31-day delay before Petitioner first sought treatment, the significant improvement she experienced following her surgery and second cortisone injection, and his characterization of her SIRVA as essentially resolved approximately ten months post-vaccination. Opp. at 6-7. Respondent also reviews the following topics: 1) a discussion of the holding in *Graves* and his preference for the holding in *Hocraffer*, 2) the large number of proffered awards in SPU cases, 3) awards for shoulder injuries in the traditional tort system which appear to be substantially lower, and 4) a "meeting-in-the-middle" method that Respondent believes is being utilized by the special masters when determining the appropriate amount of damages to be awarded. *Id.* at 6 n.2, 7-9; Appendix A to Opp. (list of traditional tort system cases); *see Graves,* 109 Fed. Cl. 579; *Hocraffer v. Sec'y of Health & Hum. Servs.,* No. 99-0533V, 2007 WL 914914 (Fed. Cl. Spec. Mstr. Feb. 28, 2007).

In her reply brief, Petitioner addresses the more general arguments raised by Respondent, noting they had been previously discussed but rejected in the process of

---

[9] *Selling v. Sec'y of Health & Hum. Servs.,* No.16-0588V, 2019 WL 3425224 (Fed. Cl. Spec. Mstr. May 2, 2019) (awarding $105,000.00 for actual pain and suffering).

[10] *Collado v. Sec'y of Health & Hum. Servs.,* No.17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for actual pain and suffering); *Meyers v. Sec'y of Health & Hum. Servs.,* No.18-0909V, 2020 WL 3755335 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $122,500.00 for actual pain and suffering); *Dobbins v. Sec'y of Health & Hum. Servs.,* No.16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for actual pain and suffering).

deciding this case. Reply Brief at 1-8. She also criticizes Respondent for failing to provide any reasoned SIRVA damages decision to justify the amount he proposes. *Id.* at 8.

## V.   Appropriate Compensation for Petitioner's Pain and Suffering

### A.   General Guidance for Analysis

The guidance provided by the *Graves* decision is clear,[11] and I have previously addressed the more general arguments made by Respondent during expedited motions days and in other damages decisions. While noting that this end result may occur in some cases (and disappoint both sides as a result), I have in fact rejected the "meeting-in-the-middle" method Respondent claims is being used, based on the proposition that "each petitioner deserves an examination of the specific facts and circumstances in her or his case." *Sakovits*, 2020 WL 3729420, at *3. I also have rejected Respondent's argument that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. *Id.* at *4. While "settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases," they are not as persuasive as reasoned decisions from a judicial neutral. *Id.* (emphasis in original). Taken as a whole, however, the data from these decisions can be a helpful gauge of the compensation being awarded in SPU SIRVA cases.

I also have not previously given great weight to Respondent's citation to pain and suffering determinations from traditional tort system state court cases, noting that Congress intended the "no-fault" system established in the Vaccine Program to be generous. H.R. REP. NO. 99-908, at 12-13 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6353-54. Thus, Vaccine Program compensation will likely be greater than those awarded in civil actions. Additionally, the descriptions of the traditional tort system cases proposed by Respondent often lack basic information needed for comparison. *Rafferty v. Sec'y of Health & Hum. Servs.*, No. 17-1906V, 2020 WL 3495956, at *18 (Fed. Cl. Spec. Mstr. May 21, 2020). As a result, "SIRVA awards in the Vaccine Program are self-evidently more relevant and apposite." *Id.*

### B.   Specific Analysis

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

---

[11] *See supra* Section II (for further discussion).

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Ms. Guymon suffered a mild to moderate SIRVA injury involving tenderness upon palpitation, weakness and pain primarily with movement, and an inability to raise her arm without pain but otherwise normal ROM which prompted her to seek treatment approximately 31 days post-vaccination. Exhibit 3 at 46-47. An MRI, performed on November 13, 2018, revealed a posterior inferior glenoid labrum tear with associated paralabral cyst,[12] no evidence of a rotator cuff tear, mild tendinosis of the supraspinatus and infraspinatus tendon, and mild hypertrophy[13] of the acromioclavicular joint. Exhibit 3 at 98-99.

In late February 2019, almost five months post-vaccination, Petitioner reported that her pain plateaued after two weeks of relief from prescribed medication. Exhibit 3 at 54. She requested a cortisone injection which provided only one week of relief. *Id.* at 54-55. Petitioner underwent arthroscopic surgery on April 18, 2019. *Id.* at 150-51.

Following surgery, Petitioner's condition gradually improved with PT. *E.g.* Exhibit 3 at 68. However, she experienced a setback in June 2019, after the addition of strengthening or isometric exercises. *Id.* at 61, 88; Exhibit 5 at 7. To combat her increased pain levels, Petitioner's orthopedist prescribed a Medrol Dosepak in early July and administered a second cortisone injection in late July 2019. Exhibit 5 at 7, 9 (respectively).

At her fifteenth and final PT session on August 23, 2019 (almost eleven months post-vaccination), Petitioner reported a lack of pain and the ability to carry light objects. Exhibit 3 at 25. When seen by her orthopedist later that same day, she indicated that the second cortisone injection, administered in late July, "provide[d] a great deal of relief." *Id.* at 10. Observing that she exhibited only a few degrees of ROM limitation, her orthopedist described Petitioner as making tremendous progress. *Id.*

Although I recognize that Respondent's briefing occurred almost one year ago, I nevertheless find the general arguments he makes to be unpersuasive. As I indicated

---

[12] "Paralabral cysts are swellings that arise around the socket of the shoulder joint (glenoid). They are pockets of joint fluid that develop outside of the joint under tears of the labrum." https://www.shoulderdoc.co.uk/article/1496 (last visited Mar. 24, 2022).

[13] Hypertrophy is "the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 898 (32th ed. 2012).

above, I have previously rejected these arguments. *See supra* Section V.A. Regarding his failure to discuss any comparable reasoned SIRVA damages decisions in this case, I acknowledge that Respondent appears to have altered his position and routinely offers helpful comparison cases in more recent briefing.

Petitioner has requested a pain and suffering award consistent with the lower end of the amounts usually awarded in SIRVA cases involving arthroscopic surgery. And I find Petitioner's analysis of reasoned SIRVA damages decisions to be accurate. Thus, I agree that $110,000.00 is an appropriate pain and suffering award.

## VI.    Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $110,00.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[14] I also find that Petitioner is entitled to $245.80 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award a lump sum payment of $110,245.80 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[15]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[14] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.